FILED

2015 Sep-29  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA



## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CASE NO. 2:13-CV-1744-SLB |
| MARGARET WILSON, | ) ) | |
| Defendant. | ) | |
| MARGARET WILSON, | ) ) | |
| Counter Claimant, | ) ) | |
| vs. | ) ) | |
| WELLS FARGO BANK, N.A.; FEDERAL HOME LOAN MORTGAGE CORPORATION, | ) ) ) ) | |
| Counter Defendants. | ) | |

## MEMORANDUM OPINION[1]

---

[1]At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of plaintiff Federal Home Loan Mortgage Corporation [Freddie Mac] and Wells Fargo. The court requested that counsel for Freddie Mac and Wells Fargo prepare a proposed memorandum opinion for the court, and it required counsel send a copy of the proposed opinion to counsel for Margaret Wilson. Although the court has made significant changes to that proposed opinion, it has adopted a large part of the proposed opinion. The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n.46 (11th Cir. 1997). This is an important opinion. Nevertheless, the court had reached a firm decision as to the appropriate outcome of the case and communicated its decision to counsel before requesting a

This case is presently pending before the court on Motion for Summary Judgment, filed by plaintiff/counter defendant, Federal Home Loan Mortgage Corporation [hereinafter Freddie Mac], and counter defendant, Wells Fargo Bank, N.A.  (Doc. 18.)[2]  Freddie Mac has sued plaintiff, Margaret Wilson, for ejectment, (doc. 1-1); Wilson filed a Counterclaim against Freddie Mac and Wells Fargo, alleging breach of contract, wrongful foreclosure, negligence, defamation, invasion of privacy, and violations of the Fair Credit Reporting Act, (*see generally* doc. 1-5).   Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the Motion for Summary Judgment, (doc. 18), is due to be granted.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine

———————————————

proposed opinion from counsel for Freddie Mac and Wells Fargo.  Counsel drafted the opinion according to the express instructions of the court as to its contents.  Although portions of this Memorandum Opinion are taken from the proposed opinion submitted by counsel for Freddie Mac and Wells Fargo, this Memorandum Opinion is the court's opinion based on its careful review of the record and the relevant caselaw.

[2]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

issue of fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Clark*, 929 F.2d at 608 ("it is never enough simply to state that the non-moving party cannot meet its burden at trial").

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007)(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)(per curiam)). Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d

1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)).

## II.  STATEMENT OF FACTS

Defendant Margaret Wilson[3] executed a promissory note [the "Note"] in favor of Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.,[4] on March 12, 2002.  (Doc. 19-1 at 33-35.)  The Note provides, upon default, "the Note Holder may send [Wilson] a written notice telling [her] that if [she] does not pay the overdue amount by a certain date, the Note Holder may require [her] to pay immediately the full amount of Principal which has not been paid and all the interestthat [she] owe[s] on that amount."  (*Id*. at 34.)   The Note was secured by a mortgage [the "Mortgage"],  for real property located in Birmingham, Alabama [the "Property"].  (*Id*. at 35, 37-38.)  Pursuant to the terms of the Mortgage, in the event of a default, the lender has the power to sell the real property if a default is not cured.  (*Id*. at 48.)   The Mortgage and the Note are herein referred to collectively as "the Loan."

---

[3] Wilson's mother, Margaret Gray, also executed the Note. Margaret Gray passed away prior to the foreclosure sale at issue and her estate is not a party to this action.

[4]Philip Cargioli, a Wells Fargo employee and the 30(b)(6) representative of both Freddie Mac and Wells Fargo, testified that Wells Fargo Home Mortgage, Inc., was a division of Wells Fargo Bank, N.A. (Doc. 19-3 at 9-10 [Cargioli Depo. at 35-37].) The foreclosure deed refers to Wells Fargo Bank, N.A., as the "successor by merger to Wells Fargo Home Mortgage, Inc." (Doc. 19-2 at 20.) Although Wilson disputes that Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A., (*see* doc. 21 at 6), she has not provided any evidence to prove that the two entites – Wells Fargo Home Mortgage and Wells Fargo Bank – are separate legal entities.

Wells Fargo assigned the Note and Mortgage to Freddie Mac in April 2002. (Doc. 19-3 at 24 [Cargioli Depo. at 93].) Wells Fargo continued as the servicer for the Loan, and retained possession of Note, endorsed in blank, and the Mortgage as the document custodian for Freddie Mac. (*Id.* at 11 [Cargioli Depo. at 41]; *id.* at 24 [Cargioli Depo. at 93-96]; *see also id.* at 207; doc. 19-4 at 53.)

Wilson starting falling behind in her payments on the Loan in February 2005. (Doc. 19-1 at 7 [Wilson Depo. at 28].) Foreclosure proceedings were started in September 2005, but stopped when Wilson filed for bankruptcy. (*Id.* at 8 [Wilson Depo. at 29].) Eventually her bankruptcy case was dismissed. (*Id.* at 8 [Wilson Depo. at 31-32].) Thereafter, Wells Fargo worked with Wilson over the next several years to find a solution to her failure to make the required payments on the Loan. (*Id.* at 10 [Wilson Depo. at 38]; *id.* at 25 [Wilson Depo. at 100]; *see also id.* at 75-76 [Loan Modification Agreement dated November 21, 2007].) Wilson was offered and completed a trial plan period in 2009, and subsequently accepted a Home Affordable Modification Program ["HAMP"] modification in February 2010, that formally modified the terms of her Loan. (*Id.* at 100-04, 111-15.) By August 2010, however, Wilson was again behind on the Loan. (Doc. 19-1 at 13, 14 [Wilson Depo. at 51, 55].) Wilson was offered a Special Forbearance Agreement in April 2011 that required reduced monthly payments of $290.88 from April through July 2011, and a balloon payment of $11,367.73 on August 1, 2011. (*Id.* at 14-15 [Wilson Depo. at 55-57], *id.* at 118.) The Special Forbearance Agreement would "be rendered null and void" in the event that "the total

amount due of each payment [was] not received." (*Id*. at 118.)  Wilson made the reduced monthly installment payments for April through July, but she did not make the balloon payment in August 2011.  (*Id*. at 15 [Wilson Depo. at 60]; *id*. at 95-96.)  Therefore, the Loan remained in default. Wilson continued making payments of $290.88 until January 2012, when a representative from Wells Fargo told her to stop making payments.  (Doc. 19-1 at 16 [Wilson Depo. at 61].)

The Loan was referred to foreclosure counsel to begin foreclosure proceedings on October 26, 2011.  (*See id*. at 56; doc. 19-2 at 8.)  Foreclosure counsel notified Wilson of the default status of the Loan by letter dated November 7, 2011.  (Doc. 19-6 at 4.)  This letter stated:

> By virtue of default in the terms of your Note and Mortgage executed to Wells Fargo Home Mortgage, Inc., . . . we hereby notify you that there has been a breach in the terms of the note and mortgage.
>
> In order to cure this breach you must send our office, in certified funds, the sum of $10,396.88, including lawful charges, which total shall be the amount necessary to reinstate this loan through December 12, 2011.  Payment, in certified funds, must be received in our office on or before December 12, 2011.  In the event we do not receive the reinstatement funds by December 12, 2011[,] it is the intention of Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. to accelerate the total amount due under the Note and Mortgage and to proceed with foreclosure as provided in said Mortgage.
>
> . . .
>
> If the breach is not cured on or before December 12, 2011, Wells Fargo Bank, N.A. . . . may at its option, declare all of the sums secured by the Mortgage to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law.  Wells Fargo Bank, N.A. . . . shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided, including, but not limited to, reasonable attorney's fees.

(*Id*. at 4.)

Wilson failed to cure her default, and the Loan was accelerated on December 20, 2011. (*Id*. at 5; doc. 19-1 at 19 [Wilson's Depo. at 76]; doc. 19-2 at 9.)  After several postponements, the foreclosure sale was set for November 14, 2012.  (Doc. 19-1 at 19 [Wilson Depo. at 76].)

Wilson continued to seek a modification of the Loan.  On July 27, 2012, Wells Fargo noted that Wilson was denied a third modification because she had a previous HAMP modification and because she could not afford the repayment plan.  (Doc. 19-3 at 100, 30 [Cargioli Depo. at 118].)  This decision was appealed and, on November 13, 2012, Wilson was notified that her appeal had been denied and the foreclosure sale was set for November 14, 2012.  (Doc. 19-3 at 169.)

Wilson testified:

> A.  . . .  Up until the day of the foreclosure, up until 11:00 o'clock on the day of the foreclosure, I was still talking to . . . Alex Gonzalez[, a Wells Fargo employee].
>
> . . .
>
> A.  . . .  Anyway, I was talking to them.  I don't want – he said it had went to the underwriter and the underwriter said they wanted bank statements.  He said that the underwriter said they had my bank transactions, they needed my bank statements.
>
> I went to the bank, Wells Fargo Bank, and had them – and I'm, like – *I knew that it was too late*; but, still, up until the very end, I was doing what they told me to do.

(Doc. 19-1 at 20 [Wilson's Depo. at 80](emphasis added).)  Also:

> . . . I was calling him, at this point, on a day-to-day basis because I *knew* they [were] saying that it was going to happen and I just wanted to stay on top of it.

Q.  They were saying the foreclosure was going to happen?

A.  (Witness nods head.)

Q.  So you called every day –

A.  Uh-huh.

Q.  – to try and stop the foreclosure sale from happening?

A.  Because they [were] leading me to believe they was still working with me, "Do this and we can do this," you know, like that.

. . .

Q.  No one at Wells Fargo at this time guaranteed a loan modification, did they?

A.  They didn't guarantee a loan modification, but they led me to believe that I wouldn't get it because they was still telling me to – I didn't assume that I would not get it because they was still telling me to fax this and do this.
So that's why I was doing it, because I was – that led to my modification.

(Doc. 19-1 at 23-24 [Wilson's Depo. at 92-93](emphasis added).)  However, she testified that she was not guaranteed a modification in return for sending in the requested documentation; she "hoped that it would work out."  (*Id*. at 25 [Wilson Depo. at 98-99].)

Freddie Mac purchased the Property at the foreclosure sale.  (Doc. 19-2 at 21.)  According to the foreclosure deed, (a) the foreclosure sale occurred following Wilson's default on the Loan, (*id*. at 20-21); (b) "due and proper notice of the foreclosure" was published in Jefferson County in the *Alabama Messenger*,[5] (*id*.); (c) the sale was held during the lawful hours of sale, (*id*. at 21).

---

[5]The auctioneer's certificate indicates that sale occurred at 10:49 *or* 11:49.  It appears to the

Foreclosure Counsel for Freddie Mac sent Wilson a Demand for Possession of the Property on November 14, 2012.  (Doc. 19-1 at 24 [Wilson Depo. at 94]; doc. 19-6 at 16-17.)  Wilson has remained in the Property since that time.

### III.  DISCUSSION

### A.    FREDDIE MAC'S EJECTMENT CLAIM

Freddie Mac contends that it is entitled to judgment as a matter of law on its ejectment claim because it purchased the property at the foreclosure sale, it holds a foreclosure deed, and Wilson remains on the property despite Freddie Mac's demand that she deliver possession.  (Doc. 19 at 10-11.)  Wilson opposes summary judgment for Freddie Mac, arguing (1) Wells Fargo was not the holder of the Note and, therefore, could not foreclose in its name; (2) the foreclosure sale was unlawful because it was not held during the legal hours; (3) Wells Fargo was equitably estopped from foreclosing based on its conduct; and (4) the foreclosure was wrongful.  (*See generally* doc. 21.)  For the reasons set forth below, the court finds that Freddie Mac has established that it is entitled to possession of the real property in interest and that Wilson wrongfully remains.  Wilson's objection to the foreclosure proceedings is without merit.  Therefore, the Motion for Summary Judgment will be granted and judgment will be entered in favor of Freddie Mac.

### 1.  Prima Facie Case

court that the auctioneer wrote 10:49 and then overwrote the "0" with a "1" to make "11:49."  (Doc. 19-2 at 15.)

In Alabama, "Actions in ejectment or actions in the nature of an action in ejectment are governed by [Ala. Code] § 6-6-280."[6] *Steele v. Federal Nat. Mortg. Ass'n*, 69 So. 3d 89, 92 (Ala. 2010)(citing *Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen*, 714 So. 2d 293, 296 (Ala. 1998)). "An ejectment plaintiff's threshold burden consists of allegations — supported by substantial evidence — that the plaintiff was possessed of the premises or has the legal title thereto, properly designating or describing them, and that the defendant entered thereupon and unlawfully withholds and detains the same." *Ware v. Deutsche Bank Nat. Trust Co.*, 75 So. 3d 1163, 1172 (Ala. 2011)(internal quotations and citations omitted). "A plaintiff who establishes that he has both

_____

[6]Section 6-6-280 provides:

(a)  A plaintiff commencing an action for the recovery of lands or the possession thereof has an election to proceed by an action of ejectment or by an action in the nature of an action of ejectment as is provided in subsection (b) of this section.

(b) An action for the recovery of land or the possession thereof in the nature of an action in ejectment may be maintained without a statement of any lease or demise to the plaintiff or ouster by a casual or nominal ejector, and the complaint is sufficient if it alleges that the plaintiff was possessed of the premises or has the legal title thereto, properly designating or describing them, and that the defendant entered thereupon and unlawfully withholds and detains the same. This action must be commenced in the name of the real owner of the land or in the name of the person entitled to the possession thereof, though the plaintiff may have obtained his title thereto by a conveyance made by a grantor who was not in possession of the land at the time of the execution of the conveyance thereof. The plaintiff may recover in this action mesne profits and damages for waste or any other injury to the lands, as the plaintiff's interests in the lands entitled him to recover, to be computed up to the time of the verdict.

Ala. Code § 6-6-280.

legal title to the property when his complaint is filed and a right to immediate possession has established the elements for statutory ejectment." *Taylor v. Bryars*, 602 So. 2d 378, 380 (Ala. 1992)(quoting *Thompson v. First State Bank of Alabama*, 503 So. 2d 858, 860 (Ala. Civ. App. 1987)(citing *Atlas Subsidiaries v. Kornegay*, 264 So. 2d 158, 161 (Ala. 1977))), *overruled on other grounds Steele v. Federal Nat. Mortg. Ass'n*, 69 So. 3d 89 (Ala. 2010).

Freddie Mac has shown that it has legal title to the Property by virtue of the foreclosure deed. Also, Wilson remains on the property despite Freddie Mac's demand for possession. This evidence is sufficient to establish a prima facie case for Freddie Mac's ejectment claim.

### 2. Note Holder

Wilson contends that Freddie Mac's ejectment claim fails because the foreclosure sale is null and void because Wells Fargo lacked the authority to conduct the foreclosure sale in its own name. The court disagrees.

The holder of the promissory note, endorsed in blank,[7] is entitled to conduct a foreclosure sale under Alabama law. *Graveling v. BankUnited N.A.*, 970 F. Supp. 2d 1243, 1254 (N.D. Ala. 2013); *see also Coleman v. BAC Servicing*, 104 So. 3d 195, 205 (Ala. Civ. App. 2012)(holder

---

[7]"A 'holder' includes a person possessing a negotiable instrument if that instrument is payable to bearer. Ala. Code § 7-1-201(21)(A). If a negotiable instrument has been endorsed in blank . . . the instrument 'becomes payable to "bearer" and may be negotiated by transfer of possession alone . . . .' Ala. Code § 7-3-205(b). Possession of a note payable to order and endorsed in blank is prima facie evidence of ownership. *See Berney v. Steiner*, 108 Ala. 111, 116, 19 So. 806 (1896)." *Graveling v. BankUnited N.A.*, 970 F. Supp. 2d 1243, 1254 (N.D. Ala. 2013).

of promissory note endorsed in blank entitled to exercise power of sale); *Perry v. Federal Nat.*

*Mortg. Ass'n,* 100 So. 3d 1090 (Ala. Civ. App. 2012)(as holder of promissory note, servicer was

"entitled to the money thus secured" and entitled to exercise the power of sale).   Under

circumstances similar to those in the instant action and applying Alabama law, the Eleventh Circuit

held that the custodian/servicer of a Freddie Mac loan, who held the Note,[8] could conduct the

foreclosure sale:

> [T]he evidence showed that Regions originated the Loan and subsequently assigned
> both the Mortgage and Note to Freddie Mac.  In conjunction with the Assignment,
> Regions endorsed the Note in blank, but retained physical possession of all loan
> documents, including the Note and Mortgage, and agreed to act as the loan servicer
> for Freddie Mac.  Thus, because of the Assignment, Freddie Mac held legal title to
> the Property, and Regions possesses the right to enforce the remedies in the Note,
> including the power of sale, as the loan servicer and holder of the Note.  *See* Ala.
> Code [§] 7-3-301 (providing a note can be enforced by, inter alia, (1) the holder of
> the instrument, or (2) a nonholder who is in possession of the instrument and who has
> the rights of a holder).
>
>              . . .
>
>        . . .  [B]ecause, as the Note was endorsed in blank, Regions is properly
> considered the holder of the Note and of the power of sale in the Note by virtue of
> possession of the Note.  *See* Ala. Code §§ 7-3-109(a), (c), [7-3]-205(b); *Thomas
> v. Wells Fargo Bank, N.A.*, 116 So. 3d 226, 233 (Ala. Civ. App.
> 2012)("Possession of a note payable to order and indorsed in blank is prima facie
> evidence of ownership.").  . . .

---

[8]Wilson also argues that Wells Fargo did not hold the Note as the "servicer," but only as the "custodian" because it never transferred possession of the Note.  The court has found no binding or persuasive case law that holds a single entity must transfer or assign possession of a Note from itself to itself, albeit between its different capacities.

*Watkins v. Regions Mortg. Inc.*, 555 Fed. Appx. 922, 925-26 (11th Cir. 2014).[9]

The court finds that, as the holder of the Note endorsed in blank, Wells Fargo was authorized to exercise the power of sale under Alabama law.

### 3. Legal Hours

Wilson argues that the foreclosure sale is due to be set aside because it did not take place during the legal hours for a foreclosure sale.  She states:

> Section 35-10-9, Alabama Code, provides that any noncompliance with statutory requirements causes the foreclosure sale and deed to be null and void.  "All sales of real estate, made under powers contained in mortgages or deeds of trust contrary to the provisions of this article, shall be null and void, notwithstanding any agreement or stipulation to the contrary".  *Id*.  Section 35-10-13, Code of Alabama provides the minimum standards for a notice of sale.  In pertinent part, this statute requires that "[t]he notice of sale must give the time, place and terms of said sale, together with a description of the property."  The notice published in this case states the sale will take place during legal hours of sale.  The legal hours of sale are set forth in section 35-10-13, Code of Alabama which provides the "sale shall be held between the hours of 11 A.M. and 4 P.M. on the day designated for the exercise of the power to sell the land."

> The only evidence presented to the court as to the time of the actual foreclosure sale is the auctioneer's bid sheet.  According to that documentation, the foreclosure sale took place on November 14, 2014 at 10:49 a.m. or 11:49 a.m.  Freddie Mac was unable to verify the actual sale time.[10]  If the sale occurred at 10:49

_____

[9]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***."  11th Cir. R. 36-2 (emphasis added).

[10]The court notes that Cargioli was not asked to "verify" the time of the foreclosure sale or what time the auction occurred.  Rather, the 30(b)(6) was questioned regarding the contents of the bid sheet:

a.m. which is a possibility, then the sale did not occur during the legal hours and is null and void, pursuant to 35-10-9.  Because the moving parties have failed to produce undisputed evidence that the foreclosure sale was conducted in accordance with Alabama law, summary judgment is due to be denied.

(Doc. 21 at 27-28 [original footnotes omitted; footnote added].)

The court disagrees that Freddie Mac and Wells Fargo failed to produce undisputed evidence that the foreclosure sale occurred during the legal hours.  They filed the Foreclosure Deed, which states that the foreclosure sale occurred "between the legal hours of sale" on November 14, 2012. (Doc. 19-2 at 21.)  As against Wilson, "the recitals in the foreclosure deed are prima facie true." *Wilson v. Federal Land Bank*, 159 So. 493, 494 (Ala. 1935)(citing *Naugher v. Sparks*, 18 So.

---------------------------------

Q.   Would you agree that that document [the auctioneer's bid sheet] tends – looks like it indicates that there was a foreclosure sale by an auctioneer named Aaron Nelson –

A. Okay.

. . .

Q.  And the – the time, it looks like it was either 10:49 or 11:49?

A.  Yes.

. . .

Q.  . . .  So does it appear that the foreclosure sale happened 11-14 at either 11:49 or 10:49?

A.  Yeah.  Based on this document, absolutely.

(Doc. 19-3 at 38 [Cargioli Dep. at 149-50].)

14

45 (Ala. 1895)); *see also Garst v. Johnson*, 37 So. 2d 183, 185 (Ala. 1948)("It is now the settled law of this state, whether invoked in a suit at law or in equity, that a deed to the purchaser at a foreclosure sale, containing recitals showing full compliance with the terms prescribed by the mortgage, is prima facie evidence of facts stated therein, and that such recitals are sufficient to establish the fact of foreclosure and ***the validity of the sale***, as against the mortgagor and his privies in title, in the absence of evidence to show that the recitals are untrue.")(emphasis added; citation omitted).

The bid sheet shows nothing more than the fact that the auctioneer changed the time of the foreclosure sale from 10:49 to 11:49 or from 11:49 to 10:49.[11]  This ambiguous evidence does not establish that the recital in the foreclosure deed, that the foreclosure occurred "between the legal hours of sale," is untrue.  To rebut the recitals in the foreclosure deed, Wilson was required to show that the sale actually occurred before 11:00 a.m.  Simply pointing to the ambiguity on the bid sheet does not "show that the recitals are untrue."  *Garst*, 37 So. 2d at 293.

The court finds that Wilson has not established evidence of a disputed issue of material fact that the foreclosure sale occurred outside the legal hours of such a sale, contrary to the recital in the foreclosure deed.

---

[11]Viewing the photocopy of the bid sheet, the court notes that it appears that the auctioneer changed the "0" in 10:49 to a "1."

15

### 4. Equitable Estoppel

Wilson contends that Wells Fargo and Freddie Mac are estopped from claiming a proper foreclosure based on Wells Fargo's conduct.  She contends:

> In this case, Wells Fargo communicated to Wilson on at least 9 prior occasions within 12 months that the foreclosure process and sale dates would be delayed while they were working . . . through the loss mitigation program.  The written confirmation of the postponement always came after the date for the sale, so Wilson had to rely on oral representations made to her by Wells Fargo and hope the sale would truly be postponed each time.  Each time, Wells Fargo had indicated the sale would be postponed, it was stopped.  The day before the last scheduled sale, Wilson as in contact with Wells Fargo.  She was advised her file was with underwriting for review.  On this same date, Wells Fargo advised Wilson that they would seek approval to postpone the sale.
>
> On the day of the scheduled sale, November 14, 2014, Wilson again spoke with Wells Fargo.  The representative advised her that they needed her bank statements to submit to underwriting.  She was instructed her go to Wells Fargo Bank branch and fax them in.  Wilson did this at 10:00 a.m.  Additionally, at 10:39:28 Wells Fargo escalated the review for level 2 . . . .  At 12:04:47 Wilson was still calling and still trying to work with Wells Fargo to stop the foreclosure.  Wells Fargo noted at 12:20:51 on November 14, 2014 "as of yesterday all documents were on file for review."  Wells Fargo noted at 12:46:36 . . . the number . . . for foreclosure attorney, if they received all documents.  They were still in the process of obtaining documents to complete the review.  The representatives on the phone had no knowledge the foreclosure sale had occurred, so they were still processing the loan for review.  By the end of the day on November 14, 2014 Wilson learned the foreclosure sale had been completed, despite her efforts and reliance on what she was being told.  The foreclosure sale took place on November 14, 2014 at 10:49 a.m. or 11:49 a.m.
>
> Wilson had available to her various methods of defeating foreclosure up [to]the day of a valid foreclosure sale, but forewent those methods in reliance on Wells Fargo's representations.  This defense does not depend upon a writing.  The estoppel claim is entirely outside the realm of both contracts and torts.  Instead, she seeks to defend against the underlying foreclosure sale that was achieved by ***lulling her into a false sense of security with blatantly untrue promises***.

(Doc. 21 at 28-30 [emphasis added].)  Freddie Mac and Wells Fargo contend Wilson's assertion of equitable estoppel is "an attempt to avoid the application of the Statute of Frauds," which would bar any request for relief based on Wells Fargo's oral promise to postpone the foreclosure sale. (Doc. 23 at 7.)

"Estoppel is an equitable doctrine invoked to avoid injustice in particular cases.  A hallmark of the doctrine is its flexible application.  Still, some guiding principles are clear.  There must be a misrepresentation of fact and reasonable reliance by another party to his detriment." *Fitch v. Unum Life Ins. Co.*, 913 F. Supp. 2d 1253, 1265 (N.D. Ala. 2012)(quoting *Heckler v. Community Health Services*, 467 U.S. 51, 59 (1984))(internal quotations and citations omitted).  The Alabama Supreme Court has set forth the "elements generally required to support an estoppel" as follows:

> 1. There must be conduct — acts, language, or silence — amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, *and at the time when it was acted upon by him.* 4. The conduct must be done with the intention, or at least with the *expectation*, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon.  . . . 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it.  6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.

*Mazer v. Jackson Ins. Agency*, 340 So. 2d 770, 772-73 (Ala. 1976)(internal quotations omitted; emphasis in original), *quoted, in part, in Branch Banking & Trust Co. v. Nichols*, No. 1130631, 2015 WL 1877666, *10 (Ala. Apr. 24, 2015).

As set forth above, Wilson testified that no one at Wells Fargo guaranteed or promised her a third loan modification. Also, she testified that Wells Fargo had told her that she had been denied a third modification of the Loan and that her appeal of the denial had been denied. Instead, she testified that she had "hoped" for a loan modification and/or postponement of the foreclosure sale, despite Wells Fargo's statements to the contrary. She testified only that she "had no reason to believe" that she would not get a modification "because [she] was doing everything that [Wells Fargo] told her to do," which consisted of faxing bank statements and a lease. (*See* doc. 19-1 at 25 [Wilson Depo. at 98]; *see also id*. at 20 [Wilson Depo. at 80].) Nevertheless, she "*knew* . . . it was too late." (*Id*. at 20 [Wilson Depo. at 80](emphasis added).) In the days before the foreclosure sale, Wells Fargo employees told Wilson that the foreclosure sale was going forward. (*Id* at 23 [Wilson Depo. at 92].) No employee of Wells Fargo promised to postpone the foreclosure sale or to modify Wilson's Loan; Wilson did not detrimentally rely on any promise or statement by any Wells Fargo employee. She states only that she was trying to comply with Wells Fargo's instructions in hopes of saving her home. (*See id*. at 25 [Wilson Depo. at 97-99].)

Viewing the evidence in the light most favorable to Wilson, the court finds that Wells Fargo never promised Wilson it would postpone the foreclosure sale or modify her loan and Wilson was

aware that no such promises had been made.  Therefore, the court finds Wilson has not established equitable estoppel such that the foreclosure sale will be set aside.

### 5. Wrongful Foreclosure

In her Counterclaim, Wilson alleges that Wells Fargo exercised the power of sale "for a purpose other than to secure the debt owed by [Wilson]."  (Doc. 1-5 ¶ 68.)  In Alabama, "A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Development Corp. v. First American Federal Sav. and Loan Ass'n*, 607 So. 2d 180, 182 (Ala. 1992)(citations omitted); *see also Watkins*, 555 Fed. Appx. at 925 (citing *Johnson v. Shirley*, 539 So. 2d 165, 168 (Ala. 1988)).

In response to Wells Fargo and Freddie Mac's evidence that Wells Fargo foreclosed on her home to secure the debt, Wilson has presented no evidence to show some other motive for the foreclosure sale.  *See Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168 (Ala. 2012).  Indeed, in her deposition Wilson testified that she did not think Wells Fargo would have foreclosed on her home if she had made her loan payments.  (Doc. 19-1 at 25 [Wilson Depo. at 99].)  In light of the undisputed evidence that Wells Fargo foreclosed on the property to secure the debt, Wilson's wrongful foreclosure claim provides no defense to Freddie Mac's ejectment claim.

### 6. Mesne Profits

Freddie Mac asks the court to award it mesne profits in the amount of $792 per month for every month Wilson has remained on the property following Freddie Mac's demand for possession. Wilson objects to any award of mesne profits on the ground that Freddie Mac's Complaint does not contain any demand for damages. The court agrees with Wilson.

Rule 8(a)(c) of the Federal Rules of Civil Procedure provides, "A pleading that states a claim for relief must contain: . . . (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."[12] "This requirement is not arduous — 'any concise statement identifying the remedies and the parties against whom relief is sought will be sufficient.'" *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1161 (11th Cir. 1993)(quoting 5 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1255 at 366 (2d ed. 1990)).

"Mesne profits" are "the fair rental value of the property during the period of tortious holding." *Wiggins v. Stewart Bros.*, 109 So. 101, 102 (Ala. 1926)(internal quotations omitted). "While damages in the form of mesne profits may be incidentally recovered, the major goal in ejectment is

---

[12] Alabama's Rule is not significantly different:

A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) *a demand for judgment for the relief the pleader seeks*. Relief in the alternative or of several different types may be demanded.

Ala. R. Civ. P. 8(a).

restorative."  Jenelle Mims Marsh, ALABAMA LAW OF DAMAGES § 34:7 (6th ed. 2015)(citing *Layton v. Hamilton*, 107 So. 830 (Ala. 1926); *Henry v. Davis*, 43 So. 122 (Ala. 1907)).

The court finds that the plaintiff in an ejectment action must demand mesne profits before they may be awarded.  In its Complaint, Freddie Mac states, "Wherefore, Plaintiff demands judgment against Defendant(s) for the immediate recovery of the Premises, and for Writ of Possession to issue instanter upon judgment in favor of Plaintiff[ ]."  (Doc. 1-1 at 2.) It did not ask for mesne profits.

However, Freddie Mac and Wells Fargo argue, "Because a statutory ejectment suit action is dual in character and Counter-Defendants notified Wilson within their Answer to her Counterclaim that they were entitled to a set-off, offset, or recoupment against Wilson, Freddie Mac is entitled to the fair rental value of the property during Wilson's tortious holding."  (Doc. 23 at 8.)  They ask the court to redesignate their affirmative defense as a counterclaim "[s]hould the Court determine that Freddie Mac's intention to seek damages was mistakenly designated as an affirmative defense."  (*Id.* at 9-10 [citing Fed. R. Civ. P. 8(c)(2)].)

Rule 8(c)(2) provides:  "If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, ***if justice requires***, treat the pleading as though it were correctly designated, and may impose terms for doing so."  Fed. R. Civ. P. 8(c)(2)(emphasis added). "As with any pleading, an affirmative defense must provide 'fair notice' of the nature of the defense and the grounds upon which it rests,  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and state a plausible defense,  *Ashcroft v. Iqbal*, 556 U.S. 662,

679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." *Bartholomew v. Pollack & Rosen, P.A.*, No. 2:15-CV-135-FtM-29DNF, 2015 WL 3852944, *1 (M.D. Fla. June 22, 2015). "Affirmative defenses challenge the underlying liability. Counterclaims are separate claims independent of the plaintiff's underlying claim. Fed. R. Civ. P. 13(c). Although common practice may be to plead the same conduct as both, they are separate and distinct pleadings accomplishing different ends." *F.D.I.C. v. F.S.S.S.*, 829 F. Supp. 317, 322 n.11 (D. Alaska 1993). "In determining whether a particular argument is an affirmative defense, courts consider the logical relationship between the defense and the cause of action, and the likelihood that the plaintiff will be unfairly surprised if the defense does not appear in the pleadings." *Hassan v. U.S. Postal Service*, 842 F.2d 260, 263 (11th Cir. 1988).

In this case, Freddie Mac seeks to amend its Complaint to contain a claim for relief for mesne profits by referring to its "Affirmative Defense" of "offset, set-off, and recoupment." Whether considered an affirmative defense or a reply counterclaim,[13] the asserted defense of "setoff, offset and

---

[13] *See Satterfield v. CFI Sales & Marketing, Inc.*, No. 6:09-CV-1827-Orl-28DAB, 2012 WL 640740, *3 (M.D. Fla. Feb. 28, 2012)("A 'set-off' is a legal term of art which refers to a counterclaim demand, arising out of a transaction extrinsic to plaintiff's cause of action. A recoupment, on the other hand, is a claim arising out of the same transaction between the same parties. In other words, a recoupment claim is more akin to an affirmative defense and is a compulsory counterclaim, while a set-off claim is a permissive counterclaim.")(internal quotations and citations omitted); *Akzo Nobel Coatings, Inc. v. Johnston Paint & Body Supplies, LLC*, Civil Action No. 08-0578-CG-B, 2009 WL 2765750, *1 (S.D. Ala. Aug. 31, 2009)("Generally, the right to setoff does not operate as a denial of the plaintiff's claim but allows the defendant to set off the debt that the plaintiff owes the defendant against the plaintiff's claim against the defendant. As such, it must be asserted as a counterclaim rather than a defense. A 'recoupment,' on the other hand refers to the defendant's right, in the same action, to reduce or eliminate the plaintiff's claim, either

recoupment" set forth in Freddie Mac and Wells Fargo's Answer to Counterclaim, (*see* doc. 1-11 at 11), is not sufficient to provide notice to Wilson that Freddie Mac is claiming mesne profits in its ejectment claim.  Therefore, the court will not award Freddie Mac mesne profits on its ejectment claim.

Based on the foregoing, the court finds that Freddie Mac is entitled to judgment as a matter of law on its claim for ejectment.  The court will enter an order requiring Wilson to vacate the premises.  Freddie Mac's claim for mesne profits will be denied.

## B.  WILSON'S COUNTERCLAIMS

Freddie Mac and Wells Fargo have moved for summary judgment as to Wilson's counterclaims. For the reasons set forth above, the court finds the Motion for Summary Judgment is due to be granted.

### 1.  Wrongful Foreclosure

For the reasons set forth above, the court finds that Wilson has not produced substantial evidence demonstrating a disputed issue of fact regarding whether Wells Fargo exercised the power of sale for some purpose other than securing the debt owed by Wilson.  Therefore, the Motion for

---

because the plaintiff has not complied with some cross-obligation of the contract on which he or she sues or because the plaintiff has violated some legal duty in the making or performance of that contract.  Thus, recoupment is a doctrine of an intrinsically defensive nature.")(internal quotations and citations omitted).

Summary Judgment will be granted and Count Five of Wilson's Counterclaim, alleging wrongful foreclosure, will be dismissed.

### 2. FDCPA Claim

In her Counterclaim, Wilson alleges that Wells Fargo, as a debt collector, engaged in consumer collection conduct that violated the Fair Debt Collection Practices Act [the FDCPA]. (*See* doc. 1-5 at ¶¶ 52, 54-55.)   However, she has conceded this claim in her Response in Opposition to the Motion for Summary Judgment.  (Doc. 21 at 33.)

Therefore, without opposition, the Motion for Summary Judgment will be granted and Count Two of Wilson's Counterclaim, alleging violations of the FDCPA , will be dismissed.

### 3. Breach of Contract

Wilson alleges that Wells Fargo breached its contract with Wilson "by failing to comply with essential terms regarding the rights of acceleration, collection and foreclosure." (Doc. 1-5 ¶¶ 86-87.) She also alleges, as a separate Count, that Wells Fargo breached its "contractual duty to act in good faith and to deal fairly with [Wilson] with regard to the note and mortgage," during the servicing of her Note and the foreclosure proceedings.  (Doc. 1-5 ¶¶ 59-60.)  In her response to the Motion for Summary Judgment, she argues:

> If this Honorable Court finds that Wells Fargo was not the [proper party] to foreclose, or that [the] foreclosure was not conducted in accordance with Alabama law, then [this] claim survives as the mortgage contract provides that only the lender can foreclosure and they are bound to comply with all applicable law.  The jury could also find that Wells Fargo failed to act in good faith and deal fairly with Wilson and follow its own written representations to Wilson about absolutely stopping a

foreclosure once it began to review for a loan modification.  At this time the motion
for summary judgment is due to be denied.

(Doc. 21 at 33 [footnote omitted].)  As set forth above, the court has found that Wells Fargo was

the proper party to foreclose and the foreclosure sale was conducted in the manner required by

Alabama law.

The court also finds that Wilson was notified that the Loan was in default as required by her

Loan documents, and Wells Fargo properly notified her of the acceleration of the Note and of the

foreclosure sale.  Wilson has not presented any specific evidence or argument to rebut the showing

by Wells Fargo and Freddie Mac that the Loan was accelerated and the foreclosure proceedings

taken within the terms of the Loan.  She has not shown that Wells Fargo ever promised to stop the

November 14, 2012, foreclosure sale – orally or in writing.

> It is well-settled in Alabama that a cause of action for breach of duty of good faith
> arising out of a contract must allege specific facts identifying that the contract in
> question was breached: "The Alabama Supreme Court 'has explicitly held that there
> is no good faith contractual cause of action'; i.e., 'bad faith is not actionable absent
> an identifiable breach in the performance of specific terms of the contract.'"
> *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1403 (N.D. Ala.
> 1997)(quoting *Lake Martin/Alabama Power Licensee Ass'n v. Alabama Power
> Co.*, 601 So. 2d 942, 945 (Ala. 1992)).

*Madison Oslin, Inc. v. Interstate Resources, Inc.*, No. 2:11-CV-1343-SLB, 2012 WL 4730877,

*12 (N.D. Ala. Sept. 30, 2012); *see also Federal Home Loan Mortg. Corp. v. Anchrum*, No.

2:14-CV-2129-AKK, 2015 WL 2452775, *7-*8   (N.D. Ala. May 22, 2015).   Wilson cannot

establish the necessary elements in support of a breach-of-contract counterclaim due to her admitted

25

default on the Loan prior to the foreclosure sale. *See Mann v. Bank of Tallassee*, 694 So. 2d 1375 (Ala. Civ. App. 1996)(holding where plaintiffs defaulted on the loan, they did not establish that the bank failed to perform its obligations under the contract merely by taking possession of the collateral post-default).

The Motion for Summary Judgment is due to be granted and Counts Three and Nine of Wilson's Counterclaim, alleging breach of contract, are due to be dismissed.

### 4. Negligence and/or Wantonness

Wilson alleges that Freddie Mac and Wells Fargo "negligently and/or wantonly serviced the loan, conducted a foreclosure sale on [Wilson's] property and [have] negligently/wantonly attempted to eject [Wilson] from the home she rightfully owns since the foreclosure performed is void." (Doc. 1-5 ¶ 63.) She contends, "If this Honorable Court finds that Wells Fargo was not the proper party to foreclose, there is sufficient evidence to deny the parties' motion for summary judgment on plaintiff's negligence and wantonness claims." (Doc. 21 at 34.) Also, she alleges that "Wells Fargo continued to 'string along' Wilson, and ultimately foreclosed in [its] own name, while having no interest in the note and then caused Freddie Mac to sue to eject [Wilson." (*Id*.)

To the extent this counterclaim is based on a wrongful or illegal foreclosure, this Counterclaim is due to be dismissed for the reasons set forth above. The court finds that Wells Fargo was the proper party to foreclose and that Wilson has failed to show that Wells Fargo misled her regarding

postponement of the foreclosure sale and/or a loan modification.  Nevertheless, even if the court found Wilson had shown such facts, this Counterclaim is barred by Alabama law.

Alabama law does not provide a tort cause of action for a breach of a duty created by a contractual agreement. *See McClung v. Mortgage Electronic Registration Systems, Inc.*, No. 2:11-CV-3621-RDP, 2012 WL 1642209, *7 (N.D. Ala. May 7, 2012).  The Alabama Supreme Court has held that "[a] negligent failure to perform a contract . . . is but a breach of the contract." *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (Ala. 1956); *see also Barber v. Business Prods. Ctr.*, 677 So. 2d 223, 228 (Ala. 1996)("a mere failure to perform a contractual obligation is not a tort").  Moreover, a number of cases in this court have held, specifically, that Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing. *See Deutsche Bank Trust Company Americas v. Garst*, 2:11-CV-4027-WMA, 2013 WL 4851493, *9 (N.D. Ala. Sept. 11, 2013)(Acker, J.)(recognizing and joining "emerging consensus that Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing," because claims related to performance under a mortgage agreement must be brought under contract law, damages for mortgage servicing are typically economic, and there is a "plethora of alternative avenues for relief in 'negligent mortgage servicing' cases")(citation and internal quotations omitted); *Barnett v. JP Morgan Chase Bank, Nat. Ass'n*, No. 1:12-CV-1745-VEH, 2013 WL 3242739, *10-*11 (N.D. Ala. June 26, 2013)(Hopkins, J.)(dismissing negligent or wanton mortgage servicing claim, finding that "because Alabama law does not recognize a cause of action for negligent or wanton mortgage

servicing, and since an agent does not incur tort liability for economic harm to a third party that stems from breaching a duty owed to his principal, no construction of the factual allegations will support the cause of action" (quoting *Blake v. Bank of America*, 845 F. Supp. 2d 1206 (M.D. Ala. 2012)))(internal quotations and emphasis omitted); *Costine v. BAC Home Loans*, 946 F. Supp. 2d 1224, 1234 (N.D. Ala. 2013)(Coogler, J.)("The Court agrees with the Middle District of Alabama's recent assessment that Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing.")(citations and internal quotation marks omitted); *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1290 (N.D. Ala. 2013)(Proctor, J.)("Any obligations Defendant owed to Plaintiff arose from the mortgage agreement, not from the duty of reasonable care generally owed to members of the public . . . . Plaintiff's negligence and wantonness claims are not actionable under Alabama law.").

Therefore, the Motion for Summary Judgment is due to be granted and Count Four of Wilson's Counterclaim, alleging negligence and/or wantonness, will be dismissed.

### 5. Abuse of Process and Slander of Title

Wilson alleges:

71.  Plaintiff Federal Home Loan Mortgage Corporation maliciously obtained the issuance of the writ or process of ejectment, from the Circuit Court of Jefferson County, Alabama and had it served on the Defendant.

72.  Plaintiff abused the writ or process because the attempt to eject the Defendant from the home with the knowledge that she is the rightful owner of her home and that the Plaintiff had no right to act against her.

28

. . .

75.    Plaintiff, Federal Home Loan Mortgage Corporation, in filing a foreclosure deed – which is void – has caused a cloud to be placed on the title of the property of the Defendant.

76.    As the proximate cause of the Plaintiff's said slandering of the Defendant's title, she was caused to suffer injuries and damages and claims all damages allowable under law.

(Doc. 1-5 ¶¶ 71-72, 75-76.)  Wilson has presented no argument in support of her abuse-of-process counterclaim.  (*See generally* doc. 21.)  However, in support of her slander-of-title counterclaim, she argues, "[T]here remains a genuine dispute as to whether the foreclosure sale was properly conducted, and since it should not have occurred by Wells Fargo, a false deed was filed which has slandered the title of Wilson."  (*Id*. at 36.)

The court's finding that the foreclosure sale was proper defeats Wilson's abuse of process and slander of title claims against Freddie Mac, the holder of a valid foreclosure deed.   As the holder of a valid foreclosure deed, Freddie Mac was entitled to seek possession of the Property from Wilson post-foreclosure through judicial proceedings.  Freddie Mac was further entitled to record its foreclosure deed in the Office of the Judge of Probate for Jefferson County.  Following the foreclosure sale, Wilson no longer held title to the Property; therefore, Freddie Mac's recording the Foreclosure Sale Deed did not create a "cloud" on her title.

For the foregoing reasons, the Motion for Summary Judgment is due to be granted and Counts Six and Seven of Wilson's Counterclaim, alleging abuse of process and slander of title, are due to be dismissed.

### 6.  Invasion of Privacy – Placed in False Light and Defamation

In her Counterclaim, Wilson alleges Wells Fargo made statements to "national credit reporting media and to her homeowner insurance carrier" that (1) Wilson was behind on her debt serviced by [Wells Fargo]," (2) Wilson had a "bad debt" with Wells Fargo, and (3) Wilson was "no longer the legal and rightful owner of her property due to a foreclosure sale."   (Doc. 1-5 ¶¶ 78, 92.)   She contends that theses statements were false and defamatory and "held [her] up in a false light."   (*Id*. ¶¶ 80, 91, 94.)

Freddie Mac and Wells Fargo contend that they are entitled to Summary Judgment as to Counts Eight and Ten of Wilson's Counterclaim; they argue that these claims are preempted by the Fair Credit Reporting Act [FCRA].   The court agrees.   To the extent Wilson based her invasion-of-privacy and defamation counterclaims against Freddie Mac and Wells Fargo on Wells Fargo's statements to credit reporting entities, these counterclaims are preempted.   As this court has held:

> Section 1681t(b)(1)(F) provides, "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ."   15 U.S.C. § 1681t(b)(1)(F). The subject matter under § 1681s-2 includes a prohibition against furnishers providing "any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."

*Schlueter v. BellSouth Telecommunications*, 770 F. Supp. 2d 1204, 1210 (N.D. Ala. 2010).

Wilson does not dispute that her invasion-of-privacy and defamation counterclaims based on Wells Fargo's communication with credit reporting entities are preempted.

Rather, Wilson contends, in her Response in Opposition to the Motion for Summary Judgment, that she has an invasion-of-privacy claim based on intrusion into seclusion as a result of Wells Fargo's debt-collection activity.[14]   (Doc. 21 at 35-36 [citing *Hope v. BSI Financial, Inc.*, Civil Action No. 5:12-CV-0736-AKK, 2012 WL 5379177, *5 (N.D. Ala. Oct. 26, 2012)].) However, her Counterclaim does not contain an invasion-of-privacy claim based on intrusion into seclusion.  Her claim is clearly based on "false light" invasion of privacy.  This type of invasion of privacy claim, like a defamation claim, requires proof of a false statement and proof that the statement is true defeats the claim.  *Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004); *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091-92 (Ala. 1988). (footnotes omitted).

The court finds that Wilson has failed to present any evidence to rebut Wells Fargo's showing that all information provided to credit reporting entities and/or to her homeowner's insurance carrier was true.  Wilson was in default on her mortgage at the time of the foreclosure sale and she was divested of any interest in the real property by the foreclosure sale.  The court finds these statements

---

[14]"There are four distinct wrongs in an invasion of privacy claim:  '(1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some elements of the plaintiff's personality for a commercial use.'"  *Robinson v. Affirmative Ins. Holdings, Inc.*, No. 2:12-CV-2159-SLB, 2014 WL 1278121, *6 (N.D. Ala. Mar. 27, 2014).

alleged to have been made by Wells Fargo to credit reporting entities and/or Wilson's homeowner's insurance carrier were true.  Also, the court finds that Wilson has not alleged Freddie Mac made any statements to credit reporting entities and/or her homeowner's insurance carrier.  Therefore, the court finds that Wilson cannot prove her defamation and invasion-of-privacy counterclaims.

The Motion for Summary Judgment is due to be granted and Wilson's Count Eight and Count Ten of Wilson's Counterclaim, alleging invasion of privacy/false light and defamation, will be dismissed.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and Freddie Mac and Wells Fargo are entitled to judgment as a matter of law.  An Order granting the Motion for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 28th day of September, 2015.


*Sharon Lovelace Blackburn*

SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE